## SILVERTHORNE *v.* ARKANSAS SOUTHEASTERN RAILWAY COMPANY; *et vice versa.*

1. Under the pleadings and evidence in the case, the court did not err in treating the plaintiff's case as one based upon a quantum meruit, and in charging the jury accordingly.
2. While certain of the evidence objected to by the plaintiff may have been irrelevant, it was not of such materiality as to be ground for the grant of a new trial.
3. The evidence authorized the verdict.
          JULY 25, 1914.

Attachment. Before Judge Frank Park. Decatur superior court. May 23, 1913.

A. E. Silverthorne sued out, against Arkansas Southeastern Railway Company, a non-resident corporation, an attachment which was levied upon certain property; and this was afterwards replevied. The declaration in attachment alleged that the defendant was indebted to the plaintiff "four thousand eight hundred dollars, besides interest, the same being on an account as hereinafter described. That said account is for salary due by the said railway company to petitioner at the rate of two hundred dollars per month, commencing February 1, 1910, and $200.00 per month each month thereafter, including January, 1912, a total of 24

months. Petitioner shows that he was employed by the defendant company as secretary and general manager, and that the amount named is due as salary for services rendered by petitioner in the capacity aforesaid." A copy of the account is attached to the declaration, which is as follows:

"Arkansas Southeastern Ry.  To A. E. Silverthorne, Dr.

"Salary as Secretary and General Manager of the Arkansas Southeastern Railway for twenty-four months, at the rate of $200.00 per month, commencing February 1st, 1910, and for each month thereafter, up to and including January, 1912,————$4,800.00."

The defendant answered, denying the material allegations of the declaration. Upon the trial of the case the jury returned a verdict for the defendant. Upon the overruling of his motion for a new trial the plaintiff sued out a writ of error; and the defendant filed a cross-bill of exceptions, assigning error upon certain rulings of the court made pending the trial.

*Erle M. Donalson*, for plaintiff.  *John R. Wilson*, for defendant.

BECK, J.  (After stating the foregoing facts.)

1. Whether this is a suit for a breach of a contract, or upon a quantum meruit for the value of the services rendered, is not clear. The plaintiff introduced evidence to show that he had a contract with the defendant company, under which he was to receive $200 per month as a salary for his services as general manager; but it does not appear any more clearly from the evidence than from the petition in the case for how long a period this salary was to continue, except that it is inferential that a continuance of the salary was for the period of his office as general manager of the company. Nor does it appear that this contract was entered into upon the part of the defendant company by authority of any corporate action, or by any representative or agent of the company having authority to make a contract with the plaintiff for such a salary. It is true that the plaintiff himself testified: "As general manager of the Arkansas Southeastern Railway Company I had entire charge of the road, traffic, and the operation and construction of the road. My services were accepted by the company, and no objection was made to my services. The railroad company agreed to pay me $200 per month. This agreement was not in writing; it was a verbal agreement. . . I think the directors of the railway company met annually. I do not remember whether the salaries of the offi-

cers were made by the board of directors or by the president, vice-president, and general manager. I do not think the salaries were fixed by the board. My salary, I think, was fixed by the president, vice-president, and myself, in consultation. My salary from the lumber company in 1910-1911 was over $800 per month. I was not secretary and general manager of both companies in 1910. I was general manager of both companies in 1911, and up till January, 1912. . . I was general manager of both companies during the year 1910-1911. I do not think the directors of both companies were the same. They had the same general manager and superintendent." In answer to the question as to whether the board of directors had voted his salary for 1910-1911, the plaintiff answered: "The president and vice-president fixed it. It was fixed by three officers. It was agreed between me and the other officers of the railroad company that no salary was ever to be paid any of the officers of the railroad company that did not perform any actual service. I spent most of my time for the railway company. Every day there would come up something with reference to railroad affairs. It would be hard to say how much of my time I gave to the railroad company and how much to the lumber company; part of my time was required by each. . . I should say that my services to the railroad company were easily worth $200 per month. . . My duties generally were to arrange things financially, buying all of the material, and seeing that the line was surveyed in the right places; and I had full and complete charge of all the operation. I had a superintendent there. I made the plans, and he carried them out. I made arrangements for the railroad to get the money to finance it. I suppose that half my time was consumed for the railway company. I was the active man of the road, except the superintendent under me. The president and vice-president did not perform any duties at all. They were to attend the meetings once a year with the secretary and treasurer and myself. The treasurer and the secretary and general manager were the only two that received a salary. The directors knew that I was rendering these services. They knew the salary I was getting. They saw the reports each month on which was shown the salary." Other evidence was introduced by the plaintiff to show the value of his services as general manager; and the railroad company introduced evidence bearing upon this point. The testimony regarding the value

of the services was very conflicting. Some of the witnesses testified that the services rendered had no value; others testified that the services were worth as high as $300 per month.

From the uncontradicted evidence in the record it appears that the plaintiff had been discharged from his office. Under the provisions of section 3588 of the Civil Code, where one is employed under a contract for a year, and the employer wrongfully discharges the agent before the end of the year, the latter may either sue immediately for any special injury from the breach of the contract, or, treating the contract as rescinded, may sue for the value of the services rendered, or he may wait till the expiration of the year and sue for and recover his entire wages. The court below during the entire case, as shown by his charge to the jury upon the conclusion of the evidence, was of the opinion that the plaintiff based his right of recovery upon a quantum meruit; and we are of the opinion that the court took the proper view of the case. There is no allegation in the petition and nothing in the evidence to show that the term of service for which the plaintiff was engaged as general manager had expired and that he was suing to recover his entire wages, or that he was suing for any special injury for a breach of the contract. And that being true, the court did not err in submitting the case to the jury in his charge upon the single theory that the plaintiff relied upon a quantum meruit. And his charge upon this subject to the jury being substantially correct, the judgment refusing a new trial will not be disturbed because of certain verbal inaccuracies in some of the excerpts. It may be remarked, moreover, that the submission of the case upon the theory that plaintiff relied upon a quantum meruit was not hurtful to him. Had he relied solely upon a contract for a stipulated sum as a salary, then the defendant might well have urged that no valid contract for a stipulated sum was shown. It appears from the evidence that the board of directors had not authorized a contract to pay the plaintiff a salary of $200 per month as general manager; and it nowhere appears that the president or vice-president had any right at a "consultation" to bind the company by any action upon this subject. It can not be inferred from anything in this record that the president or vice-president had any authority of this nature whatever. The reverse of this proposition is inferable, rather. The general manager, under the by-laws of the corporation, had the power to employ and discharge labor. In

the words of the plaintiff himself while testifying at the trial, "The president and vice-president did not perform any duties at all. They were to attend the meetings once a year with the secretary and treasurer and myself. The treasurer and the secretary and general manager were the only two that received a salary." So Mr. Silverthorne himself was the only one having any semblance of authority to agree that he, Silverthorne, as general manager should have a salary of $200 per month; and it can hardly be insisted that a contract to pay himself this salary would be binding upon this corporation.

2. While certain of the evidence objected to by the plaintiff may have been irrelevant, it was not of such materiality as to be ground for the grant of a new trial.

3. The evidence authorized the verdict.

*Judgment affirmed on the main bill of exceptions. Cross-bill dismissed. All the Justices concur.*